SIDNEY PERRY v. THE STATE.

No. 13306.  Delivered October 8, 1930.
Rehearing withdrawn January 7, 1931.
Reported in 33 S. W. (2d) 1072.

The opinion states the case.

*Beard & Abney* of Marshall, for appellant.

*John E. Taylor,* Co. Atty. and *Benjamin Woodall,* Asst. Co. Atty., both of Marshall, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for driving an automobile upon a public highway while intoxicated; punishment, one year in the penitentiary.

Upon its facts this case very plainly shows a violation of the law forbidding one while under the influence of intoxicating liquor to drive an automobile upon a public highway in this State.

There is but one bill of exception which reflects a condition, regrettable indeed, but which hardly seems to demand a reversal

at the hands of this court. In his motion for new trial appellant set up that at the time of trial he was insane, and laboring under such defects of reason from disease of the mind and its impaired condition as to be entirely incapable of representing himself in the defense of his own case, or of preparing and presenting such defense. The averments of this motion were contested, and the facts heard by the trial court, and a statement of such facts appears in the record. A synopsis of this testimony will be given. Appellant's wife testified that he was drinking on Wednesday evening before his trial was set for the morning following, and that she gave him several doses of a treatment purposing to keep him from drinking, and that he acted strangely on the day of his trial, and did not seem to be in his right mind. Upon her cross-examination she said that on Thursday morning appellant was in attendance on court, and was drunk in the constable's office, and had been drunk all the night before. Upon re-direct examination she said that he was drunk at the time, was acting strange and peculiar even for a drunk man, and that she did not know why the amount he had drunk would cause him to be so sick and everything unless it was the medicine and whisky together. She said he was staggering in the court room before the jury. Mr. Casey testified that his firm had been employed by appellant's mother and her husband, and that on the afternoon before the trial in a conversation with appellant the latter told him that he wanted to be tried the next day. Mr. Casey testified that he noted nothing unusual in appellant's condition at that time other than the fact that he was doing too much talking and wanting to be tried and making a lot of big talk around the court house. He further testified that on Thursday morning he was in the court room and some one called him and informed him that appellant was in one of the offices drunk. Witness went into the constable's office and found appellant in that condition. Appellant told him that he was going to discharge him, and did discharge him, and told witness that he could try his own case, and was a better lawyer than witness was. Witness told him if he felt that way it was just too bad, and appellant said he felt that way, and for witness to just sit by and watch him. Appellant walked into the court room and said he was ready for trial. Witness thought appellant was too drunk to know what he was doing. Witness notified the court that his firm had withdrawn from the case. Witness was present and heard appellant examine his wife as a witness. He further testified that when the case was called

for trial he asked the judge for time to talk with appellant's mother, and did call her over telephone and talk to her, and told her his condition. Witness was of the impression that appellant was temporarily insane. Witness wanted to get appellant away from the court house because he was drunk and cursing and making improper remarks about everything and everybody in town. Mr. Casey was questioned by the court as to appellant's condition in the court room during the trial and during the cross-examination of the State witnesses, and answered that he must have been out of the court room at that time, and that appellant's condition in the court room may have been improved from what it was on the outside. Appellant's mother testified, as did his step-father, as to appellant's condition the afternoon before he was tried. The mother did not see him the morning of the trial, but the step-father considered appellant as insane that morning. This witness admitted on cross-examination that he did not hear the argument made by appellant to the jury in his own case. He further said appellant had been talking all the week about wanting to go to the bat and get through with his trial.

The county attorney testified that at the time appellant was tried he had been drinking some, but that he did not then think, nor at the time he was testifying, that appellant was in such condition as to not know what he was doing. He said in his belief appellant conducted the trial as well as anyone else could have done. He put the witnesses on and argued the case to the jury. The district judge who tried the case and saw and witnessed appellant's conduct and condition, made a statement. He said he heard defendant was out drinking in the constable's office on the morning of the trial; that he called his then attorney who asked for time, and later came back and told the judge that appellant was drinking, and wanted permission to see appellant's mother. Later Mr. Casey came in and told the judge he was not going any further with the case. Defendant was brought in with his wife and announced ready for trial. The judge informed appellant that Mr. Casey had told him he was going no further with the case, and appellant stated he was ready for trial. The court requested Mr. Casey for appellant to prepare an application for suspended sentence, but after talking with appellant Mr. Casey declined apparently upon the ground that appellant had been convicted of a similar offense, at some former time. The court informed appellant of his right to excuse jurors, and appellant erased some names from his jury list. He appeared

to be under the influence of liquor, but not to any very great extent. The judge was of opinion that appellant conducted the case well for a layman. He informed the court that he did not care to testify. Appellant put the sheriff of the county on the witness stand on this hearing who testified that he observed appellant on the morning of his trial,—went in the constable's office to see him, and did not think appellant was drunk; thought something was the matter with him. Witness sat down and talked to appellant who talked as nice as could be and noticed nothing unusual in his demeanor. From witness' observation he would think appellant was in his right mind; was about as sane as he ever was to witness. On cross-examination this witness said he was close to appellant, and had known him practically all his life, and had known him intimately; had been around him when he was drinking and when he was sober, and had seen him act before as he was acting on the morning of his trial. Some one reported to witness that appellant was drunk; witness thought he was not drunk; that he had some dope or something the matter with him. Witness said he was present during the trial and that appellant conducted himself mighty well, and was not staggering and seemed to have his faculties, and made an argument to the jury. He further testified that the court conferred with him during the trial with reference to getting appellant's mother to the court house, and witness conferred with appellant's step-father who said that the mother was not coming, that she did not want to come. The judge further testified that after the sheriff told him that Mrs. Tuttle, appellant's mother, was not coming to the court house, that he called defendant and told him his mother did not want to come, but if he insisted the court would have attachment for her and have her brought, and appellant said that was all right, he did not want to have her called.

We have set these facts out at some length. The trial court necessarily has much discretion in passing upon matters of this kind. Intoxication resulting from the recent use of ardent spirits, is no excuse for crime, and we doubt if we would be justified in establishing a precedent that one who is drunk might use this as a reason for not going to trial in his case. The expressions from the various witnesses who testified and observed appellant's conditions and conduct on the day of his trial, leave the record in such condition of doubt as that we are not of opinion that the trial judge was in error in overruling the motion for new trial.

We might further observe that in connection with this motion for new trial, based apparently upon appellant's condition at the time of such trial, there appears nothing averred or stated in any supporting affidavit or brought forward in any way that would indicate that there was testimony which might have been produced before the jury from which a different result could have been obtained. There is some complaint of testimony given by appellant's wife upon cross-examination, the claim being that if it had been objected to it would not have been admitted. There rarely comes before this court a case wherein the accused defends himself, that a similar complaint is not made.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION TO WITHDRAW REHEARING.

MORROW, P. J.—Since the filing of his motion for rehearing in this cause, the appellant has filed a written request, duly verified by his affidavit, asking that said motion for rehearing be withdrawn in order that mandate may be issued in accord with the original opinion affirming the case.

The request is granted and the motion for rehearing is ordered withdrawn.

*Rehearing withdrawn.*